UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYMEYON HILL, | No. 2:22-cv-00718-KJM-EFB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| KATHLEEN ALLISON, et al., | |
| Defendants. | |

Plaintiff is a civil detainee proceeding without counsel in this action brought under 42 U.S.C. § 1983.  His application to proceed in forma pauperis was denied (ECF Nos. 9 and 11), as was his motion for reconsideration of that denial.  ECF No 14.  Plaintiff filed a second motion for reconsideration (ECF No. 15), relying on an affidavit that he filed in response to the court's order denying the earlier request for reconsideration.  The district judge granted the second request and referred to the undersigned the question of whether plaintiff's application to proceed in forma pauperis should be granted in the light of the record as a whole, including the new affidavit.  ECF No. 18.  Specifically, the district judge referred for consideration whether the record demonstrates that plaintiff's application meets the § 1915(a)(1) standard as interpreted in *Adkins v. E.I. Du Pont De Nemours & Co.*, 335 U.S. 331, 339 (1948) and its progeny.  ECF No. 18.

/////

/////

For the reasons that follow, the undersigned finds that plaintiff has not shown that he meets this standard, and accordingly, again recommends that the application be denied.

I.  **Background**

In his original motion to proceed in forma pauperis (ECF No. 5), signed under penalty of perjury, plaintiff represented that he had received no money from a government source, had no cash, no assets, no bank account, and no debt. *Id.* However, a trust account statement submitted in another case (which the court took judicial notice of) showed a balance of $3,818.37. ECF No. 9. For that reason, the undersigned recommended that plaintiff's in forma pauperis application be denied. *Id.*

Plaintiff objected to the recommendation (ECF No. 10) noting that, as a civil detainee, he was not subject to § 1915(a)(2) and (b).[1]  *Id.*

The assigned district judge adopted the recommendation on June 10, 2022. ECF No. 11. Plaintiff asked the court to reconsider the ruling, arguing again that he was not subject to § 1915(a)(2) and (b).[2]  ECF No. 12. In two additional filings, plaintiff reiterated his belief that, as a civil detainee, he was "not subject to filing fees" and curiously claimed that the court was attempting to force him into a fraudulent contract. ECF Nos. 13, 15. But, significantly, plaintiff provided no information about his finances, nor did he state that he could not pay the filing fee or other court costs in any of these filings.

The district judge responded to plaintiff's spate of filings by directing him to supplement his in forma pauperis affidavit to clarify his finances and ability to pay the filing fee. ECF No. 16. Specifically, the court noted:

/////

/////

/////

---

[1] His filing also included spurious and unexplained claims accusing the court of racism and contract fraud. ECF No. 10.

[2] This filing included unexplained assertions accusing the court of being a "judicial dictatorship" and committing fraud and racketeering. ECF No. 12.

> The trust account statement filed in one of the cases cited by the magistrate judge in *Hill v. Lynch, supra*, at docket number 9, in that case, shows on October 1, 2021 a balance of $5,154.17, and reflects three separate entries for income from "JPAY" in the amount of $100.00, $40.00, and $100.00, respectively; it also shows an "inmate special deposit" on April 20, 2022 in the amount of $1200.00, and two entries on the same date for "misc. income (exempt) in the amount of $600.00 and $51.47, respectively. The court takes judicial notice of the trust account statement. Fed. R. Evid. 201.

*Id.* at 2. The court directed plaintiff to file a sworn statement explaining: (1) the source of funds in his trust account on October 1, 2021; (2) what "JPAY" is, whether plaintiff receives regular income from this source and, if so, the amount of that income; and (3) the source of the three deposits to the trust account on April 20, 2022 and whether plaintiff receives income regularly from that source. *Id.* at 3.

Plaintiff's affidavit filed in response to the court's order states that "most of the funding in [my] inmate trust account came from the IRS exempt payment for economic stimulus funding from [the] government[.] These funds are being illegally removed by CDCR's corrupted green wall members." ECF No. 17 at 1. According to plaintiff, "IRS exempt funds are not to be tampered with at all."[3] *Id.* at 2. Plaintiff represents that he needs the funds in his trust account "for basic necessities [such as] hygiene, legal papers, etc." *Id.* at 4. Plaintiff does not specify what hygiene products he needs or list expenses he incurs that are not provided by the CDCR facility. He does not address what specific legal papers he must pay for. Nor does he provide any information regarding the cost of such items or explain why he needs the full amount in his trust account to cover those costs. And, significantly, plaintiff does not respond to the district judge's explicit order that he: (1) provide the source of the funds in his account as of October 1, 2021; (2) explain what "JPAY" is, inform the court whether he receives regular income from this source, and, if so, how much; and (3) provide the source of the three deposits to the trust account on April 20, 2022 and inform the court whether he receives income regularly from these sources.

/////

/////

/////

---

[3] Plaintiff also asserted that the court was "interfering" with his "commercial affairs." *Id.*

3

**II.    Governing Law**

28 U.S.C. § 1915(a)(1) provides, in relevant part: "[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] prisoner possesses that the person is unable to pay such fees or give security therefor."  (An explanatory note to the statute clarifies that: "The word "person" has been inserted in subsec. (a)(1) as the word probably intended by Congress.")[4]  Where an in forma pauperis (hereinafter "IFP") affidavit is written in the language of § 1915(a)(1), the court should ordinarily accept it, particularly if it is unquestioned "and where the judge does not perceive a flagrant misrepresentation." *Adkins*, 335 U.S. at 339.

"The in forma pauperis statute does not itself define what constitutes insufficient assets," but the applicant does not need to be "absolutely destitute" to qualify for IFP status. *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015).  In assessing the applicant's financial condition, the court should consider not just the applicant's income, but also the money that applicant pays for necessities such as rent, necessary bills, and food. *Id.* at 1235.

"When a claim of poverty is made under section 1915 it is proper and indeed essential for the supporting affidavits to state facts as to the affiant's poverty with some particularity, definiteness, and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981).  It is within the court's discretion to deny a motion to proceed IFP "when the [movant was] unable, or unwilling, to verify their poverty." *Id. See also Hopkins v. Tacoma Mun. Ct.*, 393 Fed. Appx. 476, 477 (9th Cir. 2010) (the district court did not abuse its discretion in denying an IFP application where the movant failed to account for his different statements regarding his employment history or otherwise verify his claim of poverty).

/////

---

[4] The court notes that, contrary to plaintiff's repeated assertions, the court has never applied the provisions of § 1915 concerning prisoner litigants to this case.  The original recommendation clearly identified plaintiff as a civil detainee and quoted and applied § 1915(a)(1).  ECF No. 9.

4

**III.     Analysis**

As noted, the question before the court is whether the current record, as a whole, demonstrates that plaintiff's application meets the § 1915(a)(1) standard under *Adkins*, 335 U.S. at 339, and its progeny. ECF No. 18. And as the district judge noted, the question includes consideration of whether plaintiff's funds are sufficient to pay not only the filing fee but also the costs of service of process and of transcripts and records on appeal. *Id.* at 3. But here, plaintiff's incomplete and misleading representations to the court make an assessment of his financial condition all but impossible. Despite multiple opportunities and, indeed, an order that he do so, plaintiff has refused to provide a clear picture of his financial status, even when the court specified for him precisely the financial information he must provide. More troubling are plaintiff's conflicting statements made under penalty of perjury. For example, in his original April 7, 2022 application, plaintiff wrote, under penalty of perjury, that he had received no money from a government source, had no cash, no assets. ECF No. 5. Yet his supplemental affidavit avers that the money in his account in October 2021 came largely from a government stimulus payment. ECF No. 17. His original application provided that he had no cash at all, but his trust account statement shows that, during the same month that he submitted the IFP application, plaintiff received hundreds of dollars in deposits to his trust account. Plaintiff wholly failed to respond to the court's order that he provide the source of these payments and inform the court whether he receives money from those sources regularly. Indeed, despite the court's order for specific financial information, plaintiff only offers that: (1) some unknown amount of the over $5,000 in his trust account in October 2021 came from a government stimulus check and (2) he needs money to pay for necessities such as hygiene items and legal paper.

While *Escobedo* indicates that the court must consider the costs of the IFP applicant's necessities of life in considering an IFP application, such consideration is impossible without an accurate picture of those costs and the applicant's income. Nor can the court determine whether plaintiff can pay for the costs of service of process or costs generated by any appeal that plaintiff

/////

/////

may file in this case because of plaintiff's lack of compliance with the earlier order.[5] Plaintiff has completely failed to explain how he cannot afford hygiene items, legal paper, and the costs of the filing fee, service of process, and appellate costs with the thousands of dollars in his trust account. Instead, plaintiff apparently believes that he is entirely exempt from these costs and entitled to IFP status as a function of being a civil detainee. This belief is not supported by the law.

Here, the court "perceive[d] a flagrant misrepresentation" (*Adkins*, 335 U.S. at 339) in plaintiff's IFP application when it became aware that plaintiff's trust account statement, filed in another court case, showed that plaintiff had several thousand dollars in his inmate trust account. The court gave plaintiff an opportunity to file a supplemental affidavit to "state facts as to [his] poverty with some particularity, definiteness, and certainty." *McQuade*, 647 F.2d at 940. Plaintiff's filings (including his supplemental affidavit), as well as the trust account statement of which the court has taken judicial notice, show that plaintiff is "unable, or unwilling, to verify [his] poverty." *Id.* The court cannot make the assessments necessary to determine the propriety of IFP status here for the simple reason that plaintiff has not provided the necessary information and is, apparently, unwilling to do so. Plaintiff has made apparent misrepresentations about his financial condition and has refused the court's invitation to provide an accurate picture of his finances. Accordingly, the motion to proceed in forma pauperis should be denied. *Hopkins,* 393 Fed. Appx. At 477; *Bridgewater v. Bankson*, No. C 09-3639 SBA, 2010 U.S. Dist. LEXIS 3717 at *8-9, (N.D. Cal. Jan. 19, 2010) (where the plaintiff failed to give a consistent or adequate statement of her finances, the court could not assess her financial status and thus denied her application to proceed in forma pauperis).

/////

---

[5] It is also impossible, at this early stage in the case, to estimate the costs of transcripts and records on appeal. (If the case is resolved at the motion to dismiss stage, for example, such costs would be much lower than if the case were to proceed through a trial.) But, should the court deny IFP status now, plaintiff may make a new motion to proceed IFP on appeal under Federal Rule of Appellate Procedure 24(a)(1). And, if the district court were to deny that motion, plaintiff may file another IFP application in the appellate court. Fed. R. App. P. 24(a)(5). Thus, plaintiff has additional opportunities to demonstrate that he cannot afford the costs of transcripts and records on appeal.

### IV.     Conclusion and Recommendation

For the foregoing reasons, it is hereby RECOMMENDED that plaintiff's April 7, 2022 motion to proceed in forma pauperis (ECF No. 5) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 12, 2023.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE